UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | |
| JAMES MICHAEL BREWER, a/k/a "Creeper," | Criminal No. 4:25-CR-00245 |
| JONATHAN ALVARADO, a/k/a "Joker," | |
| ALEXIS DELGADO, a/k/a "Chino," | |
| HECTOR LUIS LOPEZ, a/k/a "Capulito," | |
| KYLIE RAE ALVARADO, | |
| RUBY MATA, | |
| MEXI DYAN GARCIA, a/k/a "Mexi," | |
| VICTOR NORRIS ELLISON, and | |
| JESUS GOMEZ RODRIGUEZ a/k/a "JR." | |
| **Defendants.** | |

MOTION OF THE UNITED STATES FOR A
PRETRIAL DETENTION HEARING PURSUANT
TO TITLE 18, UNITED STATES CODE, SECTION 3142(f)

The United States of America, by the United States Attorney for the Southern District of

Texas, does hereby move that the Court order a pretrial detention hearing pursuant to 18 U.S.C. §

3142(f), for the purpose of presenting evidence to determine whether any condition or combination

of conditions of release will reasonably assure these Defendants' appearances as required by the

Court and the safety of other persons and the community. As grounds for the motion, the United States submits that:

1. There is probable cause to believe that the following Defendants committed offenses for which the maximum sentence is life imprisonment, per 18 U.S.C. § 3142(f)(1)(B);
   a. James Michael BREWER
   b. Jonathan ALVARADO
   c. Alexis DELGADO
   d. Hector LOPEZ
   e. Kylie ALVARADO
   f. Ruby MATA
   g. Mexi GARCIA
   h. Victor Norris ELLISON
   i. Jesus Gomez RODRIGUEZ

2. There is probable cause to believe that the following Defendants committed a violation of the Controlled Substances Act punishable by 10 or more years of imprisonment, per 18 U.S.C. § 3142(f)(1)(C);
   a. James Michael BREWER
   b. Jonathan ALVARADO
   c. Alexis DELGADO
   d. Hector LOPEZ
   e. Kylie ALVARADO
   f. Ruby MATA
   g. Mexi GARCIA
   h. Victor Norris ELLISON
   i. Jesus Gomez RODRIGUEZ

3. There is probable cause to believe that following Defendants committed a felony offense that involves the possession or use of a firearm, per 18 U.S.C. § 3142(f)(1)(E);
   a. James Michael BREWER
   b. Jonathan ALVARADO
   c. Alexis DELGADO
   d. Hector LOPEZ
   e. Victor Norris ELLISON

4. There is a serious risk that all the Defendants will flee, per 18 U.S.C. § 3142(f)(2)(A)

## INTRODUCTION

For pretrial detention to be ordered, the Government must demonstrate that no conditions will reasonably assure a defendant's appearance by a preponderance of the evidence, or that no conditions will reasonably assure the safety of the community by clear and convincing evidence. *United States v. Abad*, 350 F.3d 793, 797 (8th Cir. 2003). Section 3142(g) lists the factors this Court should consider in determining whether the Court can fashion conditions that will "reasonably assure the appearance of the person as required and the safety of any other person and the community." These factors include: (1) the nature and the circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and the characteristics of the defendant, including his or her criminal history; and (4) the nature and the seriousness of the danger to the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g). Danger to the community not only refers to physical violence, but also encompasses any likely conduct that will harm the community, including the potential for continued criminal activity. *United States v. Tortora*, 922 F.2d 880 (1st Cir. 1990); *see also United States v. Boy*, 322 F. App'x 598, 600 (10th Cir. 2009) ("The concept of safety of the community under § 3142(e) is not limited to the danger of physical violence, but rather refers to the danger that the defendant might engage in criminal activity to the detriment of the community." (internal quotation and citation omitted)).

Additionally, under the Bail Reform Act, there is a presumption that the likelihood of flight increases with the severity of the charges, the strength of the Government's case, and the penalty that conviction could bring. *See, e.g.*, *United States v. Apker*, 964 F.2d 742, 744 (8th Cir. 1992); *United States v. Soto Rivera*, 581 F. Supp 561 (D.C. Puerto Rico 1984); *United States v. Menster*, 481 F. Supp. 1117 (D.C. Fla. 1979).

Finally, a defendant is subject to a presumption that detention is warranted pending trial in

this case. Subject to rebuttal, "when a 'judicial officer finds that there is probable cause to believe' that a defendant committed one of the crimes listed in section 3142(e)(3), there is a presumption in favor of detention." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010) (citing 18 U.S.C. § 3142(e)). In such cases, the "burden of producing rebutting evidence" shifts to the defendant, though the Government ultimately retains the burden of persuasion. *United States v. Rueben*, 974 F.2d 580, 586 (5th Cir. 1992). And even if a defendant satisfies their burden of production, the presumption does not disappear from the analysis, since "the court may still consider the finding by Congress that drug offenders pose a special risk of flight and dangerousness to society." *Id*.

## ARGUMENT

### Background

At a detention hearing, the Government anticipates offering evidence that the Defendants are members and associates of Sureños 13—a criminal street gang and drug trafficking organization that distributes controlled substances, including methamphetamine, heroin, cocaine, and other narcotics. Homeland Security Investigations (HSI), Houston Police Department's (HPD) Gang Division, and other law enforcement agencies have been investigating Sureños 13 since August 2022.

Established in the 1970s, Sureños 13 is a nationally recognized gang with roots in Southern California and a foothold in multiple states and countries.  In the Houston, Texas area, Sureños 13

is divided by geography into subsets or cliques: (1) a South Brown Sureños clique in northeast Houston; and (2) a South Brown Sureños clique in southwest Houston.

Together, Jose Francisco GARCIA-MARTINEZ, a/k/a "Paco," and James Michael BREWER, a/k/a "Creeper," are the leaders of Sureños South Brown in southwest Houston and the other defendants are members or associates of the Sureños 13.

The Sureños 13 is responsible for distributing bulk kilo quantities of methamphetamine, cocaine, cocaine base ("crack cocaine"), and heroin to buyers throughout the Houston area and in other states, including Minnesota. Count 1 of the indictment involved a drug trafficking conspiracy ranging from April 2022 to the present. During the conspiracy, GARCIA-MARTINEZ, BREWER, and Jonathan ALVARADO (J. ALVARADO) acted as suppliers for members of the Sureños drug trafficking organization (Sureños DTO) while other defendants acted as sellers, security, and transportation. Mexi GARCIA, Ruby MATA, and Kylie ALVARADO (K. ALVARADO) distributed and transported illegal narcotics and acted as the "legitimate fronts" which allowed the Sureños DTO to transport drugs, lease apartments, use CashApp or similar financial systems, and mail illegal narcotics into jails, without arousing the suspicion of authorities. Alexis DELGADO, Hector LOPEZ, Victor Norris ELLISON and Jesus GOMEZ-RODRIGUEZ distributed illegal narcotics for the Sureños DTO in the Houston area.

### Title III

As part of that investigation, pursuant to Title III of The Omnibus Crime Control and Safe Streets Act of 1968, the Government utilized electronic surveillance for 60 days on a telephone utilized by GARCIA-MARTINEZ and electronic surveillance for 30 days on a telephone utilized by BREWER, which was authorized by the Hon. Keith P. Ellison. To that end, the Government has filed with Judge Ellison a motion seeking permission to disclose the wiretap material to defense

counsel and for a protective order.  Once granted, the government would ask this Court to enter an order waiving the ten-day notice requirement of 18 U.S.C. § 2518(9) so that the Government may rely on court-authorized wire intercepts at the detention hearing of the defendants in the above-captioned case, including intercepted communications between the defendants and other parties.[1]

Using evidence from two Title III judicially-ordered wire intercepts and extensive physical and electronic surveillance, the investigation showed that the defendants, Sureños DTO members and associates, interacted with, and supplied, one another with various illegal narcotics.  The defendants utilized several residential locations as "trap houses" – a house used by a criminal organization to store and manufacture narcotics, cash, and firearms – within the Houston area. These trap houses on Bissonnet St and Woodfair Rd were in the heart of residential communities.

The Government anticipates proving that the Sureños DTO was responsible for trafficking in excess of 58 kilograms of methamphetamine, 24 kilograms of methamphetamine mixture, 35 kilograms of powder cocaine, 8 kilograms of cocaine base (or "crack cocaine"), and 2 kilograms of heroin, between April 2022 and May 2025. In addition, over approximately $75,000 and fourteen firearms have been seized from these Defendants during arrests and searches.

Pursuant to the Title III warrant on GARCIA-MARTINEZ' phone, law enforcement

---

[1] Section 2518(9) reads as follows:

The contents of any wire, oral, or electronic communication intercepted pursuant to this chapter or evidence derived therefrom shall not be received in evidence or otherwise disclosed in any trial, hearing, or other proceeding in a Federal or State court unless each party, not less than ten days before trial, hearing, or proceeding, has been furnished with a copy of the court order, and accompanying application, under which the interception was authorized or approved.  This ten-day period may be waived by the judge if he finds that it was not possible to furnish the party with the above information ten days before trial, hearing, or proceeding and that the party will not be prejudiced by the delay in receiving such information.

intercepted calls showing that BREWER, GARCIA-MARTINEZ, and J. ALVARADO supplied methamphetamine and cocaine to DELGADO, LOPEZ, DOMINGUEZ, K. ALVARADO, MATA, LAZO, MORALES, and SIMAJ-GUCH.   On certain calls, GARCIA-MARTINEZ defined the roles of various members of the conspiracy, chastising them when he thought they were not working hard enough, and motivating them to do more to sell drugs. For example, on an April 28, 2024, call GARCIA-MARTINEZ pressed MORALES to sell more drugs and become a better earner. Intercepted calls on the cellphone linked to BREWER, captured him interacting with, marshaling, and directing —primarily DELGADO and LOPEZ—to source, cook, and sell crack cocaine, powder cocaine, and methamphetamine.

The Surenos DTO not only sold their narcotics locally in Houston, but also shipped their narcotics to other states.

INTERSTATE DELIVEY OF NARCOTICS

In March 2023, in Minnesota, law enforcement recovered and searched a package that was sent via the United Parcel Service (UPS) from Houston by the Sureños DTO. Law enforcement in Minnesota recovered various narcotics from the package, including over 1,000 grams of heroin, and over 2,700 grams of methamphetamine. Investigation revealed that that package was sent by an individual called "Texas Jefe" by the recipient of the narcotics shipment in Minnesota. "Texas Jefe" was identified to be BREWER.  BREWER was paid $18,500 for the narcotics transaction by the Minnesota recipient This was a similar transaction to the package that was intended to be shipped to Minnesota by the Sureños DTO in May 2024, referenced in Count 18.

LOCAL ACTIVITY

Locally, the Sureños DTO utilized their trap houses and own residences to make their drug sales. Between November 2022 and March 2023, law enforcement obtained multiple pole camera

videos of J. ALVARADO and GARCIA-MARTINEZ apparently making drug and firearms sales in front of their residence as part of the Sureños DTO.  J. ALVARADO in particular is a prolific Instagram user and has posted various photographs and videos of himself surrounded by drugs and firearms in the run-up to key events in the drug conspiracy.  DELGADO used one of the trap houses on Bissonet St ("Bissonnet Trap House") as the base for various drug transactions on behalf of the Sureños DTO.  In the run-up to a December 19 search of the Bissonet Trap House, referenced in Counts 25 through 29 of the Indictment, that resulted in the seizure of various drugs and firearms, DELGADO sold crack cocaine to an undercover officer on December 11, 2024.  In the weeks leading up to the search, DELGADO was surveilled around the Bissonet apartment complex carrying out various hand-to-hand drug sales.

Counts 2, 3, 4, 5, 6, and 7 relate to the investigation and subsequent search warrant execution of the Woodfair Trap House in November 2022 utilized by the Sureños DTO.  Investigation leading up to the execution of the search warrant showed multiple defendants visiting the location, talking about the location of the new trap house on recorded jail calls, posting videos to social media of themselves at the trap house with firearms, and advertising narcotics for sale from the trap house.

Pursuant to a search warrant of the Woodfair Trap House, law enforcement recovered two firearms, a green AM-15 rifle and a stolen black FN Herstal 5.7 x 28 mm handgun.  Additionally, law enforcement recovered a significant supply of narcotics including approximately 166 grams of powder cocaine, 25 grams of crack cocaine, 51 grams of methamphetamine, 627 grams of marijuana, 22 grams of Alprazolam (Xanax), and 312 grams of psilocybin mushrooms.  Additionally, a drug ledger was located with types of narcotics listed and the nicknames of other defendants, among others.

Count 8 involves J. ALVARADO, in April 2023, dropping off a Century Arms International 1911 handgun at a Federal Firearms License gun dealer so that the firearm could be gold-plated.  J. ALVARADO then posted a video on social media with that firearm after receiving gold-plated firearm back.

Counts 9 and 10 involved MATA's importation of narcotics through a port of entry at the United States and Mexico border in June 2023.  MATA drove a vehicle from Mexico to the Roma, Texas port of entry where her vehicle was stopped by U.S. Customs and Border Patrol (CBP). CBP observed a large quantity of goods, including alcohol, which MATA told CBP were for personal use.  CBP examined the goods in the vehicle and saw bags of potato chips in 2 larger plastic bags.  CBP examined one of the bags and noticed that it was heavier than it should be.  CBP opened the popcorn bag and discovered two clear vacuumed sealed bags wrapped in plastic and a black paper that contained a hard substance.  In total, CBP discovered a total of 58 packages of methamphetamine and 2 packages of heroin for a total of 60 packages within 30 various chip bags. A total of 29 kilograms of methamphetamine and 928 grams of heroin were seized.  The investigation showed that MATA was in a relationship with GARCIA-MARTINEZ and in an intercepted wire call GARCIA-MARTINEZ described how MATA transported the drugs by bringing her child with her to throw off police scrutiny.

Counts 11, 12, and 13 involved a traffic stop on BREWER in September 2023.  BREWER was stopped by a Texas Department of Public Safety (DPS) Trooper. DPS searched BREWER's vehicle and seized 3 pounds and 2 ounces of marijuana, approximately 6 ounces of psilocybin mushrooms, $65,000 in cash, and a black .40 caliber Glock handgun. A text thread was later discovered on BREWER's seized phone which indicated that BREWER was scheduled to buy two kilograms of powder cocaine for $25,600 from his supplier that day.

Counts 14, 15, 16, and 17 involved a series of controlled buys utilizing undercover agents from November 2023 to February 2024. In approximately March 2023, HPD officers monitoring jail calls learned that DOMINGUEZ, who was incarcerated, and his girlfriend, K. ALVARADO, were conducting Sureños DTO drug sales from the jail.  DOMINGUEZ would coordinate drug sales, primarily to other inmates and their family members, through recorded Harris County Jail to K. ALVARADO. K. ALVARADO would add the drug customers to the call via multi-party calls. After DOMINGUEZ arranged the drug sale, K. ALVARADO would receive payment through "Cash App" or "Zelle." K. ALVARADO would manufacture sheets of paper soaked with the methamphetamine or synthetic cannabinoids, print fictitious letters purported to be from attorneys on the drug-impregnated paper ("sheets"), and mail the sheets into correctional facilities throughout Texas via the United States Postal Service.

Using this knowledge, law enforcement conducted controlled buys.  The undercover agents would contact K. ALVARADO via text asking for "sheets" and a "zip of ice" ("ice" is a street term for methamphetamine), and K. ALVARADO, DOMINUGEZ, and GARCIA-MARTIENZ would then often have three way calls to discuss the transactions and the procurement of the narcotics.

Count 18 involved the attempted distribution of methamphetamine, cocaine, and crack cocaine via the UPS in May 2024.  BREWER, DELGADO, LOPEZ, and GARCIA are captured in Title III recordings organizing and discussing the transportation of the narcotics shipment to a buyer in Minnesota.  After the Surenos DTO dops off the package to UPS, UPS personnel searched the package and located four vacuum-sealed bags surrounded in packing material. There were three bags containing crystal methamphetamine totaling over 4 kilograms and the fourth bag

contained round disks of crack cocaine, totaling 112 grams, and a segment of a brick of powder cocaine totaling 286 grams.

Count 19 involves a controlled buy for methamphetamine with a Confidential Human Source (CHS-1) and SIMAJ-GUCH in June 2024 from SIMAJ-GUCH's taco truck. The investigation showed that Sureños DTO used the taco truck as a front to sell illegal narcotics.

Counts 20, 21, and 22 involved a search warrant at the residence belonging to J. ALVARADO in July 2024.  Prior to the search warrant execution, J. ALVARADO posted on social media posts highlighting the presence of firearms, packaged cocaine, crack cocaine, marijuana, and large amounts of cash stored inside the residence.  Four firearms were recovered from J. ALVARADO's residence, (1) a black Glock 19 9 mm handgun, (2) a stolen black Glock 17 9 mm handgun, (3) a loaded FN Herstal Five-Seven, 5.7 x 28 caliber handgun, and (4) a Century Arms, Inc., 7.62 x 39 mm Micro Draco firearm. Additionally, law enforcement recovered (all approximate amounts), 5 grams of Alprazolam, 110 grams of marijuana, a cash counter, electronic scales—including a blue scale with white powder residue on the weighing surface, small Ziploc and dime bags, and $9,087 in cash.

Count 23 involved a photograph recovered during a cell phone extraction.  The photograph, dated in August 2024, depicts DELGADO at the Sureños DTO Bissonet Trap House, holding multiple firearms while standing in front of and on top of cash and various narcotics. One of the firearms DELGADO is pictured with is a black 7.62 x 39mm Micro Draco with a distinctive foldable stock and engraved hold handle, which was recovered during a search warrant executed at the Bissonet Trap House in December 2024.

Count 24 involves a deal with a controlled buy with DELGADO and RODRGIUEZ in August 2024.  The Confidential Human Source (CHS-2) arranged to purchase 10 kilograms of

methamphetamine from DELGADO.  DELGADO and RODRIGUEZ both arrived at the buy location and were arrested. Officers later found 1 clear plastic bag of methamphetamine in RODRIGUEZ's vehicle and 9 clear plastic bags of methamphetamine in DELGADO's vehicle. The total weight of the narcotics was found to be 10.075 kilograms of methamphetamine.

Counts 25, 26, 27, and 26 involved the execution of a search warrant on December 2024 at the Sureños DTO Bissonet Trap House. Investigation including intercepted calls, determined that GARCIA procured this residence for BREWER and the Sureños DTO's use, utilizing the name of another unrelated individual and falsifying employment documentation so the individual could rent the apartment on behalf of the Sureños DTO. Surveillance showed multiple members of the conspiracy visit the Bissonet Trap House and conduct what appears to be drug deals and delivering narcotics to the Bissonet Trap House.

HPD seized a total of 6 firearms at the apartment, including four handguns (one stolen), three revolvers (one stolen), and two rifles: 7.62x39mm Micro Draco pistol, Glock 43 9mm handgun, 9mm handgun with no make or model, Colt MKII 0.38 special revolver, S&W Model 637 0.38 caliber special revolver, F.lli Pietta 0.44 caliber revolver. In addition to the 6 charged firearms, there were 2 "ghost" guns as well as a 3D printed firearm. Ghost guns and 3D printed firearms are considered "privately made firearms" and are difficult to trace.

Also seized was various illegal narcotics (all approximate amounts): 85 grams of Mexican Xanax; 4 grams of Oxycodone (30 mg pills); 676 grams of pink powder cocaine; 135 grams of powder cocaine; 35 pounds of marijuana; and various drug paraphernalia including scales and items used to manufacture narcotics. In the living room, there were over two-dozen vacuum sealed bags of marijuana, weighing approximately a pound each. Eight firearms were in plain view and one firearm, a tan Glock 43 9mm, was in a kitchen drawer along with powder cocaine, and

Oxycodone. Inside of a Dodge Durango, utilized by BREWER, law enforcement recovered an additional 1.7 kilograms of powder cocaine in a tan backpack along with empty firearm magazines, including a magazine for the Draco seized inside the apartment.

Count 29 involved a traffic stop of LOPEZ in March 2025. A Smith & Wesson 380 handgun was recovered from LOPEZ's pants.

## CRIMINAL HISTORY

Many of the defendants that the Government seeks pre-trial detention for have an extensive criminal history that further evidences their flagrant disregard of the law. The lengthy prison terms that each of these defendants' face creates an inherit serious risk of risk of flight in order to evade prosecution and are a danger to the community and others.

### BREWER

BREWER has several prior convictions in Texas state courts involving firearms and narcotics. The most serious of these are: (1) a conviction in Harris County, TX in February 2018 for Manufacture/Delivery of a Controlled Substance (4 – 200g), for which he was sentenced to five years' incarceration; and (2) a conviction in Leon County in January 2024 for possession of controlled substance, money laundering, and unlawful possession of a firearm by a felon, for which he was sentenced to a deferred adjudication of five years' probation and is thus still pending in state court.

### J. ALVARADO

At the state level, J. ALVARADO was convicted of Robbery in May 2015, for which he received a sentence of 2 years imprisonment. He was also convicted in October 2016 of a misdemeanor charge of evading arrest or detention. In February 2020, J. ALVARADO was convicted of another charge of evading arrest or detention (with a pervious conviction). More

recently, J. ALVARADO was convicted of Possession of a Controlled Substance in December 2020 and received 2 years' probation, and was found to have violated the probation received in that case in April of 2023. The Government is investigating whether the robbery conviction qualifies as a "serious violent felony" for sentence-enhancement purposes under 21 U.S.C. § 841(b)(1)(A).

DELGADO

DELGADO has a pending case that occurred in October 2024 in Harris County, TX for Manufacture/Delivery of a Controlled Substance (400 grams or more).

LOPEZ

In January 2024, LOPEZ was convicted of possessing a felony amount of marijuana and received a sentence of 2 years' probation.  He is charged with violating that probation in March 2025.

K. ALVARADO

K. ALVARADO has no prior convictions but has a pending state case in Harris County, TX for Manufacture/Delivery of a Controlled Substance (Methamphetamine) (4 - 400 grams).  She is currently on bond for this case.

ELLISON

ELLISON has several prior state convictions for drug offenses, the most serious of which was a conviction in January 2023 for the manufacture and delivery of a controlled substance, for which he was sentenced initially to 2 years' probation, then 2 years' incarceration upon a violation of that probation in March 2024.  ELLISON is recently received a deferred adjudication and is currently on state probation for Possession of Controlled Substance and Possession of Controlled Substance (4 – 200 grams).

<u>RODRIGUEZ</u>

RODRIGUEZ currently has a state case pending in Harris County, TX for Manufacture/Delivery Possession of Controlled Substance.

## **LEGAL STANDARD AND ARGUMENT**

Under 18 U.S.C. § 3142, that a Court may detain a defendant prior to trial if the judge finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). For certain offenses, however, the statute provides a rebuttable presumption that the defendant is both a flight risk and a danger to the community. 18 U.S.C. § 3142(e)(3).

In particular, 18 U.S.C. § 3142(e)(3)(A) creates a rebuttable **presumption** of detention "if the judicial officer finds that there is probable cause to believe that the person committed "(A) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.) . . . ."

As to the following Defendants a grand jury has found probable cause to believe the Defendants committed those offenses and are subject to that presumption, pursuant to 18 U.S.C. § 3142(e)(3)(A):

  a. James Michael BREWER
  b. Jonathan ALVARADO
  c. Alexis DELGADO
  d. Hector LOPEZ
  e. Kylie ALVARADO
  f. Ruby MATA
  g. Mexi GARCIA
  h. Victor Norris ELLISON
  i. Jesus Gomez RODRIGUEZ

As to the following Defendants, there is a rebuttable **presumption** that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community, due to a grand jury having found probable cause existing that the Defendant has committed an offense under section 18 U.S.C. § 924(c), pursuant to 18 U.S.C. § 3142(e)(3)(B):

    a.  James Michael BREWER
    b.  Jonathan ALVARADO
    c.  Alexis DELGADO
    d.  Victor Norris ELLISON

Although the fact that a grand jury has found probable cause to indict a defendant for these crimes is sufficient to support detention, the Court, in determining these issues, is to consider the factors set forth in 18 U.S.C. § 3142(g): (1) the nature and circumstances of the offense; (2) the weight of the evidence; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. 18 U.S.C. § 3142(g).  The seriousness of the charged offenses is self-evident, and the evidence – based on recorded, intercepted conversations, extensive electronic and physical surveillance – is compelling.

The Government submits that the factor of presumption is significant and when coupled with the evidence presented of the strength of the Government's case and the nature and seriousness of the danger to the community posed by the Defendants' release, in addition to the Defendants' flight risk in that if convicted at trial the Defendants face significant sentences, the Government's burden to establish and danger to the community by clear and convincing evidence

and flight risk by a preponderance of evidence has been sustained.

WHEREFORE, pursuant to the statutory presumption favoring pretrial detention in a case of this nature, the Government respectfully requests a detention hearing in three days pursuant to 18 U.S.C 3142(f)(2)[2], and petitions the Court to detain all the defendants in this case.

Respectfully submitted,

NICHOLAS J. GANJEI
United States Attorney
Southern District of Texas

DAVID L. JAFFE
Chief, Violent Crime and Racketeering Section
United States Department of Justice

RALPH PARADISO
AMANDA KOTULA
Trial Attorney
United States Department of Justice
Violent Crime and Racketeering Section
1301 New York Ave. NW, Suite 700
Washington, DC 20005
Email: Ralph.Paradiso@usdoj.gov
Email: Amanda.Kotula@usdoj.gov

---

[2] Section 3142(f)(2) reads as follows:

[. . .] The hearing shall be held immediately upon the person's first appearance before the judicial officer unless that person, or the attorney for the Government, seeks a continuance. Except for good cause, a continuance on motion of such person may not exceed five days (not including any intermediate Saturday, Sunday, or legal holiday), and a continuance on motion of the attorney for the Government may not exceed three days (not including any intermediate Saturday, Sunday, or legal holiday). [. . .]

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a copy of the foregoing was delivered on May 22, 2025, to the CM-ECF system of the United States District Court for the Southern District of Texas for electronic delivery to all counsel of record.

/s/ *Amanda Kotula*
Amanda J. Kotula
Trial Attorney